HEFNER, STARK & MAROIS, LLP
Howard S. Nevins (CA Bar Assn. No. 119366)
Aaron A. Avery (CA Bar Assn. No. 245448)
2150 River Plaza Drive, Suite 450
Sacramento, CA 95833-3883
Telephone: (916) 925-6620
Fax No: (916) 925-1127
Email: aavery@hsmlaw.com

Attorneys for
KIMBERLY J. HUSTED,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT
## EASTERN OF CALIFORNIA
### (Sacramento Division)

| | |
|---|---|
| In re<br><br>GARY DEAN CAMPBELL and<br>DEBRA LYNN CAMPBELL,<br><br>Debtors. | Case No.: 13-32529-B-7<br>DC No.: HSM-005<br>Date: April 8, 2014<br>Time: 9:32 a.m.<br>Place: 501 I Street<br>Sacramento, CA<br>Ctrm. 32, 6th Flr.<br>Judge: Hon. Thomas C. Holman |

**TRUSTEE'S MOTION FOR APPROVAL OF SALE OF REAL PROPERTY,
AND TO PAY EXPENSES OF SALE, INCLUDING COMMISSION
TO REAL ESTATE BROKER
(10774 HEATHER ROAD, TRUCKEE, CALIFORNIA)**

KIMBERLY J. HUSTED, the duly appointed Chapter 7 Trustee ("Trustee") in the pending bankruptcy case of GARY DEAN CAMPBELL and DEBRA LYNN CAMPBELL (the "Debtors"), Case No. 13-32529-B-7, files this Trustee's Motion for Approval of Sale of Real Property, and to Pay Expenses of Sale, Including Commission to Real Estate Broker (10774 Heather Road, Truckee, California) ("Motion") as follows:

1.  This case was filed as a voluntary Chapter 7 case on September 26, 2013. The Trustee was appointed as Chapter 7 Trustee on September 26, 2013, and continues to serve in that capacity.

2.  Jurisdiction for the filing of this Motion exists pursuant to 28 U.S.C. §§ 157 and

1334; 11 U.S.C. §§ 363(b) and 503(b); and the reference to this Court by the District Court for the Eastern District of California.

### Introduction and Relief Requested

3. One of the assets of the Estate, and the property that is the subject of this Motion, consists of the Estate's right, title, and interest in and to that certain real property commonly known as 10774 Heather Road, Truckee, California, APN 16-400-07-000 (the "Property").

4. The Property was listed on the Debtors' Schedule A filed in this case on October 10, 2013, with an estimated value of $350,000.00. Debtors' Schedule D disclosed a secured claim filed by the County of Nevada ("County") in the amount of $60,000.00, and the Nevada County Tax Collector filed Proof of Claim No. 4 in this case on February 10, 2014, in the amount of $41,978.54 as a secured claim (the "County Tax Lien"). A true and correct copy of Proof of Claim No. 4 is attached as Exhibit "A" to the Exhibits Cover Sheet filed and served herewith. The United States Internal Revenue Service filed Amended Proof of Claim No. 2-2 in this case on March 7, 2014, in the amount of $590,998,90, the secured portion of which the Internal Revenue Service alleges to be $466,763.15 (the "IRS Lien"). A true and correct copy of Proof of Claim No. 2-2 is attached as Exhibit "B" to the Exhibits Cover Sheet filed and served herewith. In their amended Schedule C, filed October 23, 2013, the Debtors claimed a Homestead Exemption in the Property pursuant to Cal. Code Civ. P. § 704.730(a)(2), in the amount of $100,000.00 (the "Homestead Exemption").

5. After the Trustee's appointment in this case, and based on her investigation of the Property, the Trustee elected to retain Reed Block Realty, a real estate brokerage firm ("Firm"), and specifically Reed Block, as her real estate agent (collectively "Agent"). An application requesting Court approval of the employment of the Broker/Agent on behalf of the Estate was filed on January 22, 2014, and the employment was approved by this Court on February 7, 2014.

///
///

6. Pursuant to the efforts of the Agent, the Trustee has received and accepted an offer to purchase the Property for $605,000.00 from Stacy Meredith ("Buyer"), subject to court approval and overbidding. The terms of the proposed offer to purchase the Property are summarized in the description of the Purchase Agreement described below;

7. This Motion seeks approval from the Court of: (i) the Trustee's entry into the Purchase Agreement and sale of the Property pursuant to the terms thereof, (ii) payment of a commission to Broker consistent with his listing agreement, if the proposed sale is approved and consummated with the proposed Buyer or any successful Qualified Overbidder (as described in the overbidding process below), (iii) payment of other customary expenses of closing associated with this sale, as well as defaulted utility payments; and, (iv) payment upon closing from the remaining sale proceeds of the undisputed amount of the County Tax Lien, the IRS Lien, and a portion of the Debtors' Homestead Exemption, all in the amounts set forth below.

## Purchase Agreement

8. Buyer's offer to purchase has been accepted by the Trustee, as Seller, through the mutual execution of that certain California Residential Purchase Agreement and Joint Escrow Instructions, dated as of February 24, 2014, counteroffer and any addenda (collectively, the "Purchase Agreement"). A true and correct copy of the Purchase Agreement is attached as Exhibit "C" to the Exhibits Cover Sheet filed and served with this Motion.

9. The material terms of the Purchase Agreement are as follows:

    a. The proposed sale of the Property and the Purchase Agreement are subject to Bankruptcy Court approval through the granting of this Motion;

    b. The Purchase Price for the Property is $605,000.00 ("Purchase Price" or "Sale Proceeds");

    c. Buyer has deposited the sum of $18,150.00 (the "Deposit") into escrow. The Deposit is creditable against the Purchase Price and is non-refundable after satisfaction of all of Buyer's conditions to closing. If Buyer fails to close the purchase due to default by Buyer, the Deposit shall be non-refundable and shall be retained by the Trustee as liquidated

damages for such breach;

  d. Buyer will pay the Purchase Price and close escrow on or before thirty (30) days after Court approval of this Motion (the "Closing Date").

  e. The following closing costs will be allocated to the Estate and paid from the Sale Proceeds: (i) one-half the cost of the escrow fee; (ii) the premium for the standard coverage title insurance policy; (iii) the costs to prepare and record the grant deed and other costs related thereto, including the documentary transfer tax; (iv) the prorated share of real property taxes and assessments secured against the Property (including the costs to cure all delinquencies related thereto); (v) the utilities related to the Property (including the costs to cure all utility delinquencies related thereto); and (vi) any amounts required to be withheld for state or federal taxes.

  f. Buyer's obligation to purchase the Property is contingent upon: (1) Buyer's review and approval of title to the Property and of the condition of the Property, and (2) the Buyer obtaining a loan from a conventional lender to finance the amount equal to 80% of the Purchase Price, both of which contingencies must be satisfied within seventeen (17) days after full execution of the Purchase Agreement;

  g. As set forth below, the County Tax Lien and IRS Lien will be paid off through escrow as set forth below. If any other monetary liens are discovered to exist against the Property, delivery of title free and clear of such monetary liens may require the cooperation and consent of any lien holders. If any other such secured creditor's consent cannot be obtained by the date scheduled for closing, Buyer's sole recourse will be to either assume the lien, without adjustment to the Purchase Price, or terminate the Purchase Agreement and receive the refund of the Buyer's deposit;

  h. Buyer will acquire, as part of the Property, all improvements and any fixtures located on the Property in which this bankruptcy estate owns any interest;

  i. Buyer will acquire the Property in its "AS IS," "WHERE IS," "WITH ALL FAULTS" condition. Trustee is making no representations or warranties, directly or indirectly, with respect to the condition or history of the Property and has no duty to inquire or investigate

HEFNER, STARK & MAROIS, LLP
Sacramento, California

or provide any disclosures related to the Property. Buyer shall rely solely on her own investigation of the Property in her decision to acquire the Property; and,

      j.      The proposed sale to Buyer is subject to overbidding at the hearing on this Motion. If no overbids for the Property are made, or if the Buyer is the highest bidder for the Property at the hearing on the Motion, the Deposit shall be applied to the Purchase Price or the highest price bid by Buyer at the hearing, whichever is greater. If a Qualified Overbidder outbids Buyer, Buyer shall remain obligated to buy the Property at the Purchase Price or its highest bid, if the overbidder fails to close and Buyer is the next highest bidder on the Property. If a Qualified Overbidder outbids Buyer and closes its purchase of the Property, then the Purchase Agreement shall terminate and the Deposit shall be returned to Buyer.

**Payment of IRS Lien, County Tax Lien, and Partial Homestead Exemption**

10.    Due to unpaid utilities and other charges, the Trustee has estimated ten percent (10%) for costs to sell the Property, with $544,500.00 in anticipated net sale proceeds. Because of the complexity of the tax liens encumbering the Property, avoidance of a portion of the IRS Lien, and the anticipated remaining funds available for partial payment of the Homestead Exemption, the Trustee has detailed below the anticipated distribution of sale proceeds herein.

11.    Specifically, the Trustee seeks to pay the County Tax Lien of the Nevada County Tax Collector, in the amount of $41,978.54, in full. The Trustee proposes to pay in full that portion of the IRS Lien set forth in the Internal Revenue Service's Proof of Claim attributable to tax principal and interest on tax principal in full ($256,874.10), and pay to the estate the avoided portion of the IRS Lien set forth in the Internal Revenue Service's Proof of Claim attributable to tax penalties and interest on tax penalties ($209,889.05), pursuant to the consent of the Internal Revenue Service and application of the decision of In re Bolden, 327 B.R. 657 (Bankr. C.D. Cal. 2005), which sets forth the analysis by which those portions of the IRS Lien attributable to penalties and interest on penalties are avoided for the benefit of the estate. In re Bolden, supra, 327 B.R. at 663-664. Specifically, 11 U.S.C. § 724(a) allows the Trustee to avoid liens securing claims for, *inter alia*, penalties, and 11 U.S.C. § 551 preserves

HEFNER, STARK & MAROIS, LLP
Sacramento, California

K:\Husted, Kimberly\Campbell, Gary & Debra (7830-0024)\Pldg Trustee (hsm-05) sale truckee prop\pldg mtn sale truckee prop final.wpd

for the benefit of the estate any transfer avoided pursuant to 11 U.S.C. § 724(a). True and correct copies of the In re Bolden decision and of the Trustee's calculations of those portions of the IRS Lien attributable to avoidable tax penalties and interest on tax penalties are attached as Exhibits "D" and "E," respectively, to the Exhibits Cover Sheet filed and served herewith.[1]

    12.    Finally, the Trustee proposes to pay the remaining balance of the sale proceeds, which the Trustee anticipates will be approximately $35,758.31, to the Debtors on account of their Homestead Exemption, through escrow. For clarity, the Trustee notes that the amount anticipated to be distributed to the Debtors is no less than they would receive if the Property is sold on the same terms outlined herein, but no portion of the IRS Lien is avoided for the benefit of the estate (i.e., the total sum of the avoided and unavoided portions of the IRS Lien is $466,763.15, which is the amount asserted to be secured in the Internal Revenue Service's Proof of Claim No. 2-2).

///
///
///
///
///
///
///
///

---

[1] The Internal Revenue Service, through its counsel Thomas Rohall, has consented to the sale of the Property and avoidance of those portions of the IRS Lien attributable to tax penalties and interest on tax penalties. The Trustee will provide her specific calculations of those amounts set forth in Exhibit "D" to Mr. Rohall, and anticipates that he will provide written or oral confirmation of the Internal Revenue Service's consent and agreement: 1) to the treatment outlined herein prior to or at the hearing on this Motion; and, 2) to the discharge of all Internal Revenue Service liens encumbering the Property upon payment of $256,874.10 to the Internal Revenue Service, through escrow, from the sale of the Property.

| Escrow Payee | Approximate Amount of Claim | Anticipated Payment | Basis for Anticipated Payment | Anticipated Remaining Net Sale Proceeds |
|---|---|---|---|---|
| Nevada County Tax Collector (Property Taxes Identified in Proof of Claim No. 4) | $41,978.54 | $41,978.54 | Secured property taxes identified in proof of claim. | $502,521.46 |
| Internal Revenue Service (allowed portion of IRS Lien identified in Proof of Claim No. 2-2, attributable to tax principal and interest on tax principal) | $466,763.15 | $256,874.10 | 11 U.S.C. § 363(f)(2); Internal Revenue Service has consented to the discharge of its liens encumbering the Property upon payment of the allowed portion of the IRS Lien, pursuant to In re Bolden, 11 U.S.C. §§ 724(a), 726(a)(4), 522(c)(2), 551, with the avoided portion of the IRS Lien preserved for the benefit of the estate. | $245,647.36 |
| Chapter 7 Estate (avoided portion of IRS Lien identified in Proof of Claim No. 2-2, attributable to tax penalties and interest on tax penalties) | | $209,889.05 | In re Bolden; 11 U.S.C. §§ 724(a), 726(a)(4), 522(c)(2), 551; Consent of Internal Revenue Service. | $35,758.31 |
| Debtors' Homestead Exemption | $100,000.00 | $35,758.31 | Cal. Code Civ. P. § 704.730(a)(2). | $0.00 |

### Fair Price for Property

13.　As set forth in its Schedule A filed October 10, 2013, the Debtors valued the Property at approximately $350,000.00. Pursuant to the Purchase Agreement, the Purchase Price will exceed Debtors' estimated value by approximately $255,000.00 (representing an increase of approximately 73%). Accordingly, based in part on this significant increase in price from Debtors' estimated value, and the Property's reasonable exposure to the market through listing with an experienced Agent, the Trustee believes that the Purchase Price represents a

fair market value for the Property.

14. Furthermore, the Trustee has independently concluded that the Purchase Price of $605,000.00 appears to be a fair and reasonable price for the Property. This conclusion is based, in part, on the Trustee's review with the Agent of property values for similarly situated properties in the area and the condition of the existing improvements to the Property.

### Proposed Terms for Overbidding

15. The Trustee proposes that any persons or entities wishing to bid on the Property be required to first become a qualified overbidder (a "Qualified Overbidder") in the manner set forth below, prior to the commencement of the hearing on the Motion.

16. Any person or entity wishing to become a Qualified Overbidder must deliver to the Trustee, no later than two (2) business days prior to the date scheduled for the hearing on this Motion: (i) the Overbidder Deposit, and (ii) a showing of financial ability to perform. The "Overbidder Deposit" shall consist of a non-refundable deposit in the amount of $18,150.00, in the form of a cashier's check or money order made payable to Kimberly J. Husted, Chapter 7 Trustee of the Gary Dean Campbell and Debra Lynn Campbell Bankruptcy Estate," which will be applied to the purchase price for the Property if the Qualified Overbidder is the successful purchaser following the hearing on the Motion. The financial showing shall include, without limitation, either the overbidder's qualifications acceptable to Trustee for obtaining a conventional loan for 80% financing of the Purchase Price and the ability to fund the balance of the Purchase Price in cash in accordance with the terms of the Purchase Agreement, or proof of the ability of the Qualified Overbidder to fund payment of the entire Purchase Price in cash.

17. Prior to the hearing, a Qualified Overbidder may obtain permission from the Trustee to inspect the Property in order to investigate the Property and waive all contingencies to its purchase thereof, including approval of the condition of the property and state of title. Any such inspection shall be subject to the Qualified Overbidder: (i) delivering the Deposit and showing of financial ability to perform as provided above, and (ii) executing a form of Purchase and Sale Agreement on the same terms as the Purchase Agreement entered into by Buyer.

By submitting an overbid at the sale hearing, any Qualified Overbidder shall be deemed to have conclusively waived all contingencies to the purchase of the Property under the Purchase Agreement, except for court approval of the sale to such Qualified Overbidder.

18. If a Qualified Overbidder is not successful at the hearing, the Overbidder Deposit shall be returned to such Qualified Overbidder upon entry of the order confirming the successful bidder for the Property. If a Qualified Overbidder is approved as the high bidder but breaches its obligation to consummate the sale for any reason other than a failure to obtain financing for such purchase, or otherwise breaches its covenants to the Trustee and the Estate, its Overbidder Deposit shall be retained and administered as an asset of the Estate.

19. The Trustee proposes that the initial overbid be $607,500.00 and subsequent overbids, if any, be in increments of $2,500. The high bidder must purchase the Property on terms identical to those set forth in the Purchase Agreement and subject to any modifications ordered by the Court. If the Buyer is the high bidder, it shall pay the greater of its high bid or $605,000.00 for the Property. In the event a Qualified Overbidder outbids the Buyer, Buyer's offer to purchase the Property pursuant to the terms of the Purchase Agreement may be maintained by Buyer as a back-up offer (with the Purchase Price based on the highest bid made by Buyer at the hearing on the Motion), at Buyer's election at the hearing on this Motion. Any such back-up offer shall become effective upon the successful overbidder's failure to close in accordance with the terms of the Purchase Agreement, as may be modified by the Court, so long as Buyer's Purchase Price is the next highest bid for the Property. In any event, the Purchase Agreement shall terminate and the Deposit shall be returned to Buyer upon close of escrow for the sale of the Property by any successful Qualified Overbidder.

### Authorization to Pay Commission to Broker

20. The Trustee required the professional services of Broker to act as the Estate's agent to market and sell the Property. By separate application, the Trustee sought approval by the court to employ the Broker on behalf of the Estate pursuant to the terms of a listing agreement filed therewith (the "Listing Agreement").

21. Although the Trustee has not previously sought approval of any specific commission rate, the Listing Agreement provides for the Broker to receive a commission of six percent (6%) of the sales price of the Property. Based on her experience as a Chapter 7 trustee, the Trustee believes such a commission is within the range of customary and reasonable fees charged and paid in the area for professional brokerage services in connection with residential real estate such as the Property. In consideration of the Broker's efforts to market the Property and obtain Buyer's offer to purchase the Property, and consistent with the terms of the Listing Agreement, the Trustee seeks authorization from the Court to pay the commission to the Broker upon closing of escrow from the Sales Proceeds.

22. The Trustee is informed and believes that Broker is disinterested within the meaning of the Bankruptcy Code for purposes of this engagement. In particular, as described in the Purchase Agreement, the Broker represents only the Trustee in this transaction and the Buyer is represented by another agent, Dickson Realty. The Trustee understands that, if payment of the commission to Broker is approved by the court, the Broker will be sharing half of the commission to Dickson Realty at closing as a cooperating broker on this transaction.

23. The Trustee believes that Broker has carried and continues to carry out its responsibilities under the Listing Agreement and that payment of the commission pursuant to the Listing Agreement is appropriate.

///
///
///
///
///
///
///
///
///

**WHEREFORE,** the Trustee respectfully requests the Court enter an order authorizing her to:

1. enter the Purchase Agreement and sell the Property to the Buyer on the terms and conditions set forth in the Purchase Agreement, or alternatively to the successful Qualified Overbidder at the hearing on the Motion on the terms set forth in the Purchase Agreement, subject to any modifications ordered by the Court;

2. sell the Property on an "as is" "where is" "with all faults" basis, with no representations or warranties, express or implied, from the Trustee or the Estate with respect to the Property;

3. sign any and all documents that may be appropriate and/or necessary to consummate the sale;

4. pay the commission to Broker as set forth herein and in the Listing Agreement, through escrow upon the closing of the sale of the Property;

5. pay the reasonable and necessary costs and expenses of closing through escrow, including delinquent utilities, the Estate's pro-rata share of real property taxes and assessments secured against the Property, and including the amounts to the Nevada County Tax Collector, the Internal Revenue Service, and the Debtors, as set forth herein; and,

6. for such other relief as the Court deems necessary and proper.

Dated: March 10, 2014

HEFNER, STARK & MAROIS, LLP

By /s/ Aaron A. Avery
Aaron A. Avery, Attorneys for
KIMBERLY J. HUSTED, Chapter 7 Trustee